**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEON HETHERINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 3758** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | |
| **COMMUNITY COLLEGE** | ) | |
| **DISTRICT NO. 508 and** | ) | |
| **LUVIA MORENO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Keon Hetherington has sued City Colleges of Chicago and Luvia Moreno, its

Dean of Student Services, under 42 U.S.C. § 1983 and Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681.  The defendants have moved to dismiss

Hetherington's amended complaint.  In doing so, the defendants point out that the

correct institutional defendant is the Board of Trustees of Community College District

No. 508, so the Court will order the substitution of that defendant for City Colleges.

### Background

Hetherington was a student at Harold Washington College.  His claims arise from

the aftermath of a complaint that a female student made about him in August 2024.  The

female student made a complaint that Hetherington had sexually harassed and

assaulted her and had stalked her.  Hetherington says the female student's allegations

are untrue.

In his amended complaint in the present case, Hetherington alleges that on the

same day the female student made the complaint—August 29, 2024—Moreno, City Colleges' Dean of Student Services, issued a mutual no-contact order involving Hetherington and the other student. This was done, Hetherington says, without giving him notice of the charges against him or a chance to respond. Hetherington also alleges that about three and one-half months later, on December 12, 2024, he requested "academic accommodations" (he does not specify what) "due to the mental and emotional toll of defending against the allegations," but Moreno denied his request, stating that "Title IX does not offer those protections to alleged perpetrators" and leaving any accommodations to the discretion of individual professors. Compl. ¶¶ 13, 14.

Hetherington further alleges that in June 2025—about two months after he filed the present lawsuit—he made a cross-complaint against the other student and against Moreno, alleging retaliation, procedural misconduct, and unequal treatment. Hetherington says that City Colleges has taken no action on his complaint, and he cites this as evidence of selective or discriminatory enforcement.

Documents attached to Hetherington's amended complaint reflect that as part of City Colleges' inquiry regarding the female student's complaint, both she and Hetherington were interviewed, as were several witnesses apparently identified by the complainant. An investigative report was prepared and was provided to both the complainant and Hetherington, and they were each given a chance to respond in writing, which both of them did. After a final report was prepared and provided to both the complainant and Hetherington, a virtual hearing before a three-member panel was held in July 2025 (after the present lawsuit had been filed), and Hetherington and the complainant were each given the opportunity to submit cross-examination questions in

2

advance. Both did so; these were reviewed by the hearing panel for relevance; and a list of approved questions was provided in advance of the hearing.

Following the hearing, on September 15, 2025, a twelve-page, single-spaced written ruling was provided. *See* Compl., Ex. C. In the ruling (called a "Title IX Written Determination of Responsibility"), the hearing panel found the complainant "generally . . . credible" and said that Hetherington's "credibility was not as sound" for reasons the hearing officer described in the ruling. The hearing panel found "per the preponderance of the evidence" standard that Hetherington had "violated the [City Colleges] Title IX Policy by sexually harassing" the complainant. Among other things, the hearing panel concluded that the evidence showed that Hetherington "demonstrated a pattern of inserting himself into the same spaces as Complainant" at the college, "despite being aware of the no-contact order . . ." and had also enlisted a friend to approach the complainant "to probe into their past relationship." Written Determination, p. 6 of 12. The hearing panel concluded based on these and other findings that "there is sufficient evidence per the preponderance of the evidence standard that [Hetherington] violated the [City Colleges] Title IX Policy by sexually harassing Complainant," *Id.*, p. 8 of 12. The hearing panel further found that the same conduct "constitute[s] stalking in violation of [City Colleges'] EEO and Title IX Policy." *Id.*, p. 10 of 12.

The complainant also alleged that Hetherington had engaged in dating violence and sexual assault. The hearing panel found that these allegations were outside City Colleges' jurisdiction because they were alleged to have occurred off campus. The hearing panel also concluded that allegations by the complainant of citizenship-based, pregnancy-based, and gender-based discrimination by Hetherington were either outside

3

of City Colleges' jurisdiction or had not been established. *Id.*, p. 11 of 12.

The hearing panel recommended imposing a one-year suspension upon Hetherington, precluding him from returning until the fall of 2026; suspending his access to his student e-mail address; and suspending his student ID card. *Id.*, p. 12 or 12.

Hetherington alleges that the hearing panel's determination was arbitrary, capricious, discriminatory, and in violation of due process. Among other things, he alleges that a suspension "imposed after both parties are no longer enrolled . . . serves no protective or educational purpose. It is purely punitive and symbolic . . . " Am. Compl. ¶ 29.

In count 1 of Hetherington's amended complaint, asserted against City Colleges, he alleges that City Colleges engaged in selective enforcement and denied him equal educational access on the basis of sex, in violation of Title IX. In count 2, asserted against Moreno, Hetherington alleges that Moreno violated his due process rights by issuing a no-contact order without an opportunity to respond or a hearing and violated his right to equal protection by selectively denying him protections and accommodations on the basis of his gender. The defendants have moved to dismiss Hetherington's complaint under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

**1. Due process / equal protection claim (Count 2)**

**a. Due process**

The Court begins with Count 2, which as noted is asserted against Moreno. Hetherington has not stated a viable claim for denial of due process. A viable due process claim under 42 U.S.C. § 1983 requires a plaintiff to plausibly allege that he was

4

deprived of liberty or property without due process of law. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 572 (1975). Protected interests in property "are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Id.* at 572-73. A college education "is not 'property' in the usual sense of the word. Instead, we ask whether the student as shown that he has a *legally protected entitlement* to his continued education at the university." *Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (cleaned up; emphasis in original). "In the context of higher education, any property interest is a matter of contract between the student and the university." *Id.* In this regard,

> a university student must do more than show that he has a contract with the university; he must establish that the contract entitled him to the specific right that the university allegedly took, such as the right to a continuing education or the right not to be suspended without good cause. Generalities won't do; the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return.

*Id.* (cleaned up).

Hetherington's amended complaint includes no such allegations. Under the circumstances, he has failed to allege that he had a property interest in continued education at City Colleges. His due process claim fails on this basis alone.

Even if Hetherington had adequately alleged a property interest in continued education, his due process would fail on the second requirement. The basic requirements of due process are notice and an opportunity to be heard. *See, e.g., Goss*, 419 U.S. at 577-79. The materials attached to Hetherington's complaint in this case reflect that before a decision was made on the complaint by the female student,

5

Hetherington was advised what the charges against him were, and he was given a hearing, at which he testified on his own behalf and was allowed to propose questions for the complainant. No facts are alleged that, under the circumstances, would support a contention that Hetherington was denied due process in connection with his suspension.

As for the no-contact order, Hetherington has not identified any protectible liberty or property interest in being able to have contact with the person who made the complaint against him. The Court also notes that Hetherington's complaint describes the no-contact order as mutual, meaning that it applied to the complainant too. For these reasons, he has asserted no viable due process claim against Moreno.

### b. Equal protection

Count 2 also includes an equal protection component; Hetherington alleges that he was treated in a discriminatory manner based on his gender. Count 2, however, is asserted against Moreno. Hetherington does not allege that Moreno played any role in the decision on the complaint made by the female student. To sustain a claim against Moreno in his personal capacity for denial of Hetherington's equal protection rights, Hetherington has to plausibly allege that Moreno had personal involvement in violating his constitutional rights. *See, e.g., Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Hetherington does not allege in his amended complaint that Moreno was involved in determining the merits of the female student's complaint—that was done by a hearing panel. Moreno *is* alleged to have been directly involved in imposing the no-contact order, but because the order was mutual—it applied both to Hetherington and to his female accuser—it cannot serve as a basis for a claim of denial of equal protection.

6

Hetherington also sues Moreno in her "official" capacity. An official capacity lawsuit against a governmental official amounts to a lawsuit against the governmental entity of which the official is an agent, in this case the Board of Trustees. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1984). A claim under section 1983 against a local governmental entity can succeed only if the constitutional deprivation resulted from a custom, policy, or practice of the governmental entity. *See generally Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But Hetherington's complaint includes no allegations along these lines, and thus no plausible allegations supporting an official capacity claim.

For these reasons, the Court dismisses count 2 of Hetherington's amended complaint for failure to state a claim.

**2.      Title IX claim (Count 1)**

Count 1 of Hetherington's complaint is a claim against City Colleges (actually, against the Board of Trustees) for violation of Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (Title IX is enforceable through an implied private right of action).

The Court will assume for purposes of discussion that Hetherington's suspension excluded him from participation in an educational program, even though it's not entirely clear: as noted earlier, Hetherington's amended complaint appears to suggest that the suspension had no actual effect on him because it was "imposed after [he was] no

7

longer enrolled" at the school.  Am. Compl. ¶ 29.

The key question in assessing whether Hetherington has stated a viable Title IX claim is:  "do the alleged facts, if true, raise a plausible inference that the university discriminated against John 'on the basis of sex?'"  *Doe*, 928 F.3d at 667-68.  To support this proposition, Hetherington cites three points.  The first involves the fact that Moreno imposed a no-contact order, which appears to have effectively barred Hetherington from the college campus.  But there is no basis to infer that the no-contact order was discriminatory:  Hetherington describes it as a "mutual" order that applied both to him and his female accuser.

The second point Hetherington cites is the fact that he was not provided an accommodation to be able to be on campus, and when he challenged this he was told by Moreno that such accommodations are not given to accused persons.  The Court notes that Hetherington does not allege that *his* accuser got accommodations, but even if so, favoring accusers over accused persons does not equate to gender discrimination, at least without more.

The third point Hetherington cites in support of his claim of gender discrimination is that the hearing came out adversely to him.  This appears to boil down to the proposition that the hearing panel believed the accuser and not him.  But no caselaw supports the proposition that an adverse outcome alone is enough to give rise to a discrimination claim.  And Hetherington does not allege any surrounding circumstances relevant to the hearing that would rise to an inference of gender-based discrimination.  Moreno's alleged comment that accommodations for a no-contact order would be available to an accuser and not an accused does not assist Hetherington in this regard:

8

there is no allegation that Moreno was involved in making the findings against Hetherington in connection with the hearing.

For these reasons, the Court dismisses count 1 of Hetherington's amended complaint.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss plaintiff's amended complaint [dkt. no. 42].  Unless plaintiff files by June 10, 2026 a motion for leave to amend attaching a proposed second amended complaint that includes at least one viable claim over which the Court has jurisdiction, the Court will enter judgment against him.  A telephonic status hearing is set for June 16, 2026 at 8:55 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date:  May 27, 2026

_____
MATTHEW F. KENNELLY
United States District Judge